IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARILYN CHAVEZ,** | : |
| *Plaintiff*, | : |
| v. | : Case No.:  2:23-cv-2173 |
| **EDGAR SNYDER & ASSOCIATES, LLC** and **ARMAND J. LEONELLI, ESQ.**, *jointly and severally*, | : |
| *Defendants*. | : |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Marilyn Chavez, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendants Edgar Snyder & Associates, LLC and Mr. Armand J. Leonelli, Esq. (referred to collectively as "Defendants"), of which the following is a statement:

**PARTIES**

1. Marilyn Chavez (hereinafter "Ms. Chavez" or "Plaintiff") is an adult individual who currently resides at 207 Delaware Ave., Oakmont, PA 15139.

2. Edgar Snyder & Associates, LLC, (hereinafter "Edgar Snyder") is a Pennsylvania limited liability corporation with its headquarters at 600 Grant Street, 10th Floor, Pittsburgh, PA 15219.

3. Armand J. Leonelli, Esq. (hereinafter "Mr. Leonelli") is an adult individual who is the Chief Executive Officer and Partner of Edgar Snyder and a direct participant in the statutory torts set forth herein.

## JURISDICTION AND VENUE

4. Jurisdiction is proper as Ms. Chavez brings this lawsuit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42. U.S.C. §2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA").

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

6. Defendant corporation's principal place of business is in the Western District of Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

7. In January 2022, Ms. Chavez commenced her employment with Edgar Snyder as a Legal Assistant.

8. Throughout her tenure at Edgar Snyder, Ms. Chavez experienced harassment and intimidation from Mr. Leonelli, a Partner at Edgar Snyder who was recently appointed as the Chief Executive Officer.

9. Mr. Leonelli projected an image of exaggerated machismo and chauvinism at Edgar Snyder, often boasting about his powerlifting career and engaging in discussions with his male colleagues that objectified and demeaned women, both at work and during company outings. (Exhibit A, captured image of https://www.edgarsnyder.com/attorneys/armand-leonelli).

10. During her time at the company, Ms. Chavez regularly witnessed and overheard Mr. Leonelli making inappropriate sexual and misogynistic remarks about women.

11. Additionally, Mr. Leonelli acquired a reputation among Edgar Snyder employees for his infidelity, displaying inappropriate behavior towards female employees within the office, and engaging in sexual relationships with some female employees outside of work.

12. As here, Mr. Leonelli exerted subtle influence over the women he targeted at the office. This included physical contact, intentionally brushing against them, and placing his hand on their backs or shoulders. He also employed loud and aggressive behavior in public to intimidate and embarrass female employees.

13. Mr. Leonelli exploited his position of power and authority at Edgar Snyder in his pursuit of engaging in relationships with female employees.

14. Edgar Snyder's management consistently covered up Mr. Leonelli's infidelity, sexual misconduct, and harassment by disregarding and retaliating against complaints raised by female employees.

15. Upon information and belief, prior to assuming the role of CEO at Edgar Snyder, Mr. Leonelli's former superiors—now his subordinates—were aware of his involvement in an extramarital affair within the company.

16. Furthermore, the female employee made complaints and was thereafter terminated from her position at Edgar Snyder, while Mr. Leonelli faced no consequences and continued his career uninterrupted.

17. Ultimately, Mr. Leonelli targeted Ms. Chavez, leading to the termination of her career at Edgar Snyder, as detailed herein.

    **a. Ms. Chavez met Mr. Leonelli during her first week at Edgar Snyder.**

18. During the week of January 28, 2022, Ms. Chavez encountered Mr. Leonelli by the elevators at the Edgar Snyder office.

19. Over the subsequent months, Ms. Chavez's interactions with Mr. Leonelli were limited to passing pleasantries in the hallway.

20. Around June 14, 2022, Ms. Chavez began to observe and suspect unusual behavior on the part of Mr. Leonelli.

21. On June 14, 2022, while walking through the office with a colleague named "Kebron," Ms. Chavez noticed that Mr. Leonelli appeared to be trailing them for an extended period.

22. On the same day, during a visit to the cafeteria, Mr. Leonelli approached Ms. Chavez and repeatedly inquired about her well-being in a flirtatious manner. Despite her several assurances that she was fine, he persisted.

23. Following this encounter, Ms. Chavez's female coworker, "Adelbis," remarked that she believed Mr. Leonelli had developed a romantic interest in Ms. Chavez. Ms. Chavez, at that time, did not attach significant importance to this observation.

24. Around August 1, 2022, Mr. Leonelli engaged Ms. Chavez in a conversation within the cafeteria, informing her of his upcoming vacation to Greece. During their discussion about vacations, Ms. Chavez noticed his slightly nervous yet polite demeanor.

25. Subsequently, on August 3, 2022, Ms. Chavez emailed Mr. Leonelli, expressing wishes for safe travels and an enjoyable vacation. Throughout her communication, Ms. Chavez maintained her usual courteous and polite tone.

26. Upon his return from vacation, Mr. Leonelli initiated more frequent conversations with Ms. Chavez, often seeking her attention in the cafeteria. He posed inquiries about her well-being in a manner that she found peculiar and uncomfortable.

  b. **Mr. Leonelli began flirting with Ms. Chavez more aggressively at an Edgar Snyder holiday party.**

27. On December 16, 2022, during a holiday party arranged by Edgar Snyder for its staff, Mr. Leonelli commenced a series of harassing and intimidating actions directed at Ms. Chavez. He deliberately impeded her path as she attempted to take a seat at the bar alongside a female coworker.

28. Despite her repeated utterances of "excuse me," Mr. Leonelli persisted in blocking her way. When Ms. Chavez endeavored to move past him by applying gentle force, Mr. Leonelli stood his ground resolutely.

29. Ms. Chavez believes that Mr. Leonelli was attempting to engage in "flirting" behavior, as he persistently obstructed her path and seemed to derive amusement from doing so.

30. Later during the same event, Ms. Chavez observed that Mr. Leonelli displayed visible displeasure towards her for not responding to his attempts at flirting.

31. Subsequent to the holiday party, Ms. Chavez began to experience discomfort in Mr. Leonelli's presence at the workplace. His inappropriate advances and attempts at flirting became increasingly frequent, contributing to her unease.

  c. **Mr. Leonelli continued harassing, intimidating and inappropriately flirting with Ms. Chavez.**

32. Around January 2023, Mr. Leonelli entered the cafeteria where Ms. Chavez was conversing with several female coworkers.

33. Upon noticing Mr. Leonelli's entrance, Ms. Chavez promptly left the table, observing his inappropriate stare directed at her backside as she moved away.

34. Subsequently, Ms. Chavez was informed by her coworkers that Mr. Leonelli approached the group of female employees after she departed, inquiring about their discussion and implying that Ms. Chavez had just been engaged in a sexually suggestive conversation.

35. When Ms. Chavez's coworkers told Mr. Leonelli they were discussing her dogs, Mr. Leonelli said, "Oh, I liked what I was thinking she was saying better."

36. On January 29, 2023, Mr. Leonelli delivered a presentation to Ms. Chavez and her coworkers.

37. Throughout the presentation, Mr. Leonelli maintained unwavering eye contact with Ms. Chavez, causing her to feel uncomfortable and intimidated.

38. On March 9, 2023, Mr. Leonelli shared an elevator with Ms. Chavez and once again initiated physical contact by brushing his shoulder against hers, and seemly deriving amusement from his actions as Ms. Chavez politely expressed her discomfort.

39. Despite Ms. Chavez's attempts to create distance, Mr. Leonelli persisted in moving closer, effectively cornering her. Ms. Chavez eventually hurriedly exited the elevator.

40. On March 15, 2023, Ms. Chavez noticed Mr. Leonelli once again inappropriately staring at her backside in the cafeteria.

41. On March 16, 2023, Ms. Chavez noticed Mr. Leonelli once again inappropriately staring at her while she was at the printer.

42. Around April 19, 2023, while Ms. Chavez was using the printer, she noticed Mr. Leonelli blatantly scanning her from head to toe and fixating on her chest and rear end. This prolonged stare from Mr. Leonelli persisted as Ms. Chavez left the printer area.

43. On a separate occasion, while passing in the hallways of Edgar Snyder, Mr. Leonelli forcefully pressed Ms. Chavez against a wall using his shoulder and side, preventing her from moving away.

44. Ms. Chavez repeatedly vocalized her request for Mr. Leonelli to release her by loudly exclaiming, "Excuse me!" multiple times.

45. Once again, Mr. Leonelli acted as if he was amused and that his physical touch was benign or somehow done in jest.

46. At all times relevant, Ms. Chavez felt subjected to harassment and discomfort due to Mr. Leonelli's actions.

47. Although Mr. Leonelli framed his behavior as jest, this instance exemplified his inappropriate initiation of physical contact with Ms. Chavez, displaying a form of subtle influence, and causing her to experience discomfort and intimidation.

   **d. Following an incident at an Edgar Snyder happy hour, Ms. Chavez engaged in protected activity by reporting Mr. Leonelli for sexual harassment.**

48. On Wednesday, July 26, 2023, Mr. Leonelli, Ms. Chavez, and other Edgar Snyder employees attended an after-work happy hour at Sullivan's Steakhouse in the U.S. Steel building, where Edgar Snyder's office is located.

49. Mr. Leonelli, in an apparent inhebriated state, while on the patio of the Sullivan's Steakhouse, made many discriminatory and sexually explicit comments about women, including:

   i. Mr. Leonelli was making negative comments about a young female associate named "Paige".

    ii. Mr. Leonelli loudly proclaimed that page was "stupid", "annonying" and in his opinion a poor attorney.

    iii. In the same conversation, Mr. Leonelli made loud commentary about a case involving a "blowjob" and made use of the word "blowjob" repeatedly such that he could be overheard by members of the public within earshot.

50. Mr. Leonelli had no expectation of privacy under the circumstances.

51. In a crowded space filled with Ms. Chavez's colleagues and superiors, Mr. Leonelli began loudly berating Ms. Chavez for not partaking in alcohol and declining to sit at a table next to him when he instructed her to do so.

52. Mr. Leonelli was seated alongside several other Partners of Edgar Snyder, individuals believed to have witnessed his public humiliation of Ms. Chavez.

53. Ms. Chavez sat at a table with two female coworkers, consuming juice and water, when Mr. Leonelli vociferously and repeatedly demanded that she "come sit here!"

54. Despite Ms. Chavez's multiple requests for Mr. Leonelli to cease, he, in an apparent inebriated state, continued to loudly berate, humiliate, and intimidate her, all in the presence of her superiors and colleagues.

55. On August 2, 2023, Ms. Chavez reported Mr. Leonelli's behavior at the happy hour to Edgar Snyder's Director of Human Resources, Kori Amos, and partners Christine Zaremski-Young, Esq. (hereinafter "Ms. Zaremski-Young") and Robert Fisher, Esq. (hereinafter "Mr. Young").

56. On August 2, 2022, Ms. Chavez and Ms. Zaremski-Young discussed the complaint virtually via a video call.

8

57. Specifically, Ms. Chavez conveyed the following points to Ms. Zaremski-Young:

    i. Since Edgar Snyder's holiday party in December 2022, Mr. Leonelli had singled out Ms. Chavez.

    ii. Mr. Leonelli engaged in stalking and harassment towards Ms. Chavez within the workplace.

    iii. Mr. Leonelli initiated physical contact by brushing his shoulders against Ms. Chavez and trapping her in an elevator.

    iv. Ms. Chavez noticed Mr. Leonelli inappropriately gazing at her, scanning her from head to toe.

    v. Mr. Leonelli made inappropriate sexual remarks to and around Ms. Chavez.

    vi. When Ms. Chavez rejected his advances, Mr. Leonelli responded with anger.

    vii. Mr. Leonelli obstructed Ms. Chavez's passage in hallways, deliberately brushing his shoulders against her.

    viii. Ms. Chavez was experiencing retaliation from Mr. Leonelli because she had refused his sexual advances and was growing increasingly uncomfortable in Mr. Leonelli's mounting aggression.

    ix. Ms. Chavez disclosed to Ms. Zaremski-Young that she had been experiencing increasing anxiety and sleep difficulties due to Mr. Leonelli's targeted harassment.

58. Ms. Chavez provided a pre-written statement to Ms. Amos and Ms. Zaremski-Young detailing some of the incidents discussed during the meeting. (Exhibit B – Chavez Narrative).

59. Ms. Zaremski-Young informed Ms. Chavez that Edgar Snyder would promptly undertake an investigation into her complaint, including all the allegations.

> **e. Edgar Snyder blatantly retaliated against Ms. Chavez for her complaint of sexual harassment against Mr. Leonelli when it terminated her employment the following day.**

60. On August 3, 2023, Ms. Chavez received notification that the investigation into her sexual harassment complaint had concluded, with the determination that her complaint was unfounded.

61. Following this decision, Ms. Chavez's employment was immediately terminated. She was informed that Edgar Snyder had engaged a "criminal law attorney" and was requesting the return of her company-issued laptop.

62. Ms. Chavez's termination serves as an exemplar of an ongoing pattern and practice of retaliation and quid pro quo sexual harassment perpetrated by the Defendants.

63. Edgar Snyder engaged in retaliation and terminated female employees ("Heather") as a means to conceal Mr. Leonelli's recurring behavior of pursuing women within the workplace.

64. Based on information and belief, subsequent to Edgar Snyder's inquiry into Ms. Chavez's complaint, one or more additional female employees were terminated subsequent to their participation in the investigation.

65. In the aftermath of Ms. Chavez's complaint and the subsequent termination of her employment, it is crucial to underscore the unique circumstances surrounding Edgar Snyder, a law

firm renowned for its top-tier employment law practice. The firm has been a prolific filer of claims under various laws safeguarding employees in the workplace, with a significant emphasis on Title VII anti-discrimination claims related to gender.

66. Throughout its history, Edgar Snyder's Law Firm has achieved substantial awards and settlements, many stemming from anti-retaliation wrongful termination claims that bear striking similarities to the allegations presented in this case.

67. Given the firm's extensive experience in this legal domain, it is reasonable to assume that its leadership, including Armand Leonelli and other partners, is well-versed in the intricacies of employment law. Discussions on these legal practices likely featured prominently in corporate meetings, profit and loss discussions, and annual performance reviews.

68. Notably, Edgar Snyder's management, led by Mr. Leonelli, opted to terminate Ms. Chavez's employment within a remarkably brief 24-hour period following her complaint. This swift action extended to another female employee who served as a witness.

69. The stated justification for Ms. Chavez's termination was that her complaint was deemed unfounded—an action directly contravening the anti-retaliation provisions enshrined in Title VII and the PHRA.

70. Despite possessing ample resources and in-house expertise to navigate Ms. Chavez's complaint and address the challenges it posed, Edgar Snyder's management chose an alarming course of action.

71. Edgar Snyder's management had a range of approaches and potential outcomes at their disposal. Nevertheless, amongst the available options, only one approach was absolutely certain to be unlawful—the termination of the employee who engaged in protected activity by filing a complaint.

72. Despite a spectrum of possibilities, Edgar Snyder's management consciously disregarded all lawful alternatives, opting instead for the one starkly violating the law: the prompt firing of Ms. Chavez and the other female witness within less than 24 hours of the report.

73. The termination of Ms. Chavez, coupled with the dismissal of another employee involved in the complaint, reflects a clear and decisive message to the entire staff: Reporting management or Mr. Leonelli for sexual harassment or misconduct will result in swift termination.

74. This egregious response starkly contradicts the principles embedded in Title VII and the PHRA, designed to eradicate precisely such vindictive and unlawful practices from the workplace.

75. In effect, Edgar Snyder's management team demonstrated a blatant disregard for the legal protections afforded by anti-retaliation provisions, embodying the type of conduct that lawmakers sought to eliminate when enacting these laws.

76. The termination of Ms. Chavez stands as a stark example of an illegal and malevolent act, undermining the very principles of justice and fairness championed by employment law.

## PARTICIPATION THEORY

77. The courts of this Commonwealth recognize the "participation theory," whereby, a corporate officer or representative who participates in wrongful, injury-producing conduct can be personally and individually liable while acting within the scope of their duty to the corporation. *See Loeffler v. McShane*, 539 A.2d 876 (Pa. Super. Ct. 1988); *Moy v. Schreiber Deed Sec. Co.*, 535 A.2d 1168 (Pa. Super. Ct. 1988); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247 (Pa. Super. Ct. 1977).

78. "Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer." *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983). Liability will attach where the record establishes the corporate officer's participation in the tortious activity. *Id.* "Thus, in order for liability to attach the officer must actually participate in wrongful acts." *Kaites v. Commonwealth, Dep't of Envtl. Res.*, 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987).

79. Further, the fact that a corporation may be vicariously or secondarily liable under the doctrine of respondeat superior does not relieve the individual of their responsibility. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) (citing *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967)). "Such an action may exist even though the agent or officer derived no personal benefit, but acted on behalf, and in the name of, the corporation and the corporation alone was enriched by the act." *Shonberger v. Oswell,* 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing *McDonald v. First Nat'l Bank*, 44 A.2d 265, 266 (Pa. 1945)).

80. Mr. Leonelli was Partner and Chief Executive Officer of Edgar Snyder and acted within his capacity as an officer of the company in the Honorable Court of this intentional tort. Thus, he may properly be held personally liable, jointly and severally.

### COUNT I
### DISCRIMINATION ON THE BASIS OF SEX
### IN VIOLATION OF TITLE VII AND THE PHRA
*Plaintiff v. Defendants, jointly and severally*

81. Ms. Chavez incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

82. Edgar Snyder constitutes an employer under the meaning of Title VII.

83. Ms. Chavez constituted an employee under the meaning of Title VII.

84. To make a showing of a prima facie case of sex discrimination under Title VII, Ms. Chavez must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably. *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d at 267 (3d Cir. 2005) (citing *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817). A plaintiff may also meet the last element by showing that the adverse employment action "occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff,* 541 F.3d 205, 214 (3d Cir. 2008).

85. The PHRA mirrors the language in Title VII and is assessed under the same framework. *Henderson v. Phila. Hous. Auth.*, No. 22-00129, 2023 U.S. Dist. LEXIS 1590, at *19 n.11 (E.D. Pa. Jan. 5, 2023).

86. Ms. Chavez is a female and member of a protected class under the meaning of Title VII.

87. Ms. Chavez was qualified for her position.

88. Ms. Chavez suffered the ultimate adverse employment action when she was terminated by Edgar Snyder the day following her complaints of sexual harassment against Mr. Leonelli.

89. Ms. Chavez's termination occurred under circumstances that give rise to a strong inference of intentional discrimination.

90. As set forth hereinabove, the Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

91. As a direct and proximate cause of the aforementioned conduct, Ms. Chavez suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Ms. Chavez hereby requests this Honorable Court consider the above and grant relief in Ms. Chavez's favor and against Defendants, jointly and severally, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to any such relief as deemed just and proper.

## COUNT II
### SEXUAL HARRASSMENT AND HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF TITLE VII AND THE PHRA
*Plaintiff v. Defendants, jointly and severally*

92. Ms. Chavez incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

93. Sexual harassment that creates a hostile work environment clearly violates Title VII. *Starnes v. Butler Cnty. Court of Court of Common Pleas 971 F.3d 416, 428* (3d Cir. 2020) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

94. To state a successful claim for a sexually hostile work environment under Title VII, a plaintiff must allege: (1) they suffered intentional discrimination based on sex; (2) the discrimination was severe or pervasive; (3) they were detrimentally affected by the discrimination; (4) it would have detrimentally affected a reasonable person of the same sex; and (5) a basis for employer liability is present. *Id.*; *Andrews v. Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990).

95. The same legal standards apply to Title VII and PHRA claims. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2008).

96. Ms. Chavez suffered intentional discrimination based on sex.

97. The discrimination Ms. Chavez suffered was severe and pervasive to where it altered the terms of Ms. Chavez's employment.

98. Ms. Chavez was detrimentally affected by the discrimination.

99. Defendants' intentional discrimination would have detrimentally affected a reasonable person of the same sex.

100. A basis for employer liability is present.

101. Defendants' actions were intentional, willful, wonton, and done in reckless disregard to the rights of Plaintiff. Defendants' actions warrant the imposition of punitive damages.

102. As a direct and proximate result of the conduct alleged herein, Ms. Chavez is entitled to compensatory damages, emotional distress, back pay, front pay, punitive damages and costs of suit.

WHEREFORE, Ms. Chavez hereby requests this Honorable Court consider the above and grant relief in Ms. Chavez's favor and against Defendants, jointly and severally, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to any such relief as deemed just and proper.

### COUNT III
### RETALIATION IN VIOLATION OF TITLE VII AND THE PHRA
*Plaintiff v. Defendants, jointly and severally*

103. Ms. Chavez incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

104. To establish a prima facie case of retaliation under Title VII and the PHRA, a plaintiff must provide evidence that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her

participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006); see also, *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).

105. Ms. Chavez engaged in a protected activity when she reported sexual harassment by Mr. Leonelli.

106. Edgar Snyder and Mr. Leonelli took an adverse action against Ms. Chavez by terminating her employment the day following her complaint against Mr. Leonelli.

107. But for Ms. Chavez's complaint, Defendants would not have terminated her.

108. Defendants' actions were intentional, willful, wonton, and done in reckless disregard to the rights of Ms. Chavez. Defendants' actions warrant the imposition of punitive damages.

109. As a direct and proximate result of the conduct alleged herein, Ms. Chavez is entitled to compensatory damages, emotional distress, back pay, front pay, punitive damages and costs of suit.

WHEREFORE, Ms. Chavez hereby requests this Honorable Court consider the above and grant relief in Ms. Chavez's favor and against Defendants, jointly and severally, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to any such relief as deemed just and proper.

**COUNT IV
FAILURE TO ACCOMODATE
IN VIOLATION OF THE ADA AND THE PHRA**
*Plaintiff v. Defendants, jointly and severally*

110. Ms. Chavez incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

111. To prevail on a claim of failure to accommodate, Ms. Chavez must establish that (1) the employer knew about her disability; (2) she requested accommodation or assistance for her disability; (3) the employer did not make a good faith effort to assist her in seeking accommodations; and (4) she could have been reasonably accommodated but for the employer's lack of good faith. *Tourtellotte v. Eli Lily & Co.*, 636 F. App'x 831, 849 (3d Cir. 2016).

112. The PHRA is largely similar to the ADA but not limited in scope by the ADA, and offers greater protections. *Harrisburg Area Cmty. Coll. v. Pa. Human Rels. Comm'n*, 245 A.3d 283, 287-88 (Pa. Commw. Ct. 2020).

113. On August 2, 2023, Ms. Chavez informed Ms. Zaremski-Young and Edgar Snyder's Director of Human Resources of her disabilities.

114. Ms. Chavez requested that an investigation be conducted regarding her sexual harassment complaint.

115. Defendants did not make a good faith effort to assist her in seeking accommodation.

116. Defendants could have easily accommodated Ms. Chavez but for its bad faith.

117. As set forth hereinabove, the Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

118. As a direct and proximate cause of the aforementioned conduct, Ms. Chavez suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Ms. Chavez hereby requests this Honorable Court consider the above and grant relief in Ms. Chavez's favor and against Defendants, jointly and severally, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such relief as deemed just and proper.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ADA AND THE PHRA
*Plaintiff v. Defendants, jointly and severally*

119. Ms. Chavez incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

120. The ADA prohibits employers from retaliating against employees. 42 U.S.C. § 12203(a). To establish a claim for retaliation, Ms. Chavez must prove the following: (1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 F. App'x 41, 49-50 (3d Cir. 2017).

121. The PHRA is largely similar to the ADA but not limited in scope by the ADA, and offers greater protections. *Harrisburg Area Cmty. Coll.*, 245 A.3d at 287-88.

122. Ms. Chavez's disclosure of her severe anxiety as a result of Mr. Leonelli's conduct was a protected activity.

123. Ms. Chavez was terminated the day following her protected activity.

124. But for Ms. Chavez's protected activity, Defendants would not have terminated Ms. Chavez.

125. As set forth hereinabove, the Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

126. As a direct and proximate cause of the aforementioned conduct, Ms. Chavez suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Ms. Chavez hereby requests this Honorable Court consider the above and grant relief in Ms. Chavez's favor and against Defendants, jointly and severally, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorney's fees, in addition to any such relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: December 29, 2023

By: _____
Joshua P. Ward (Pa. I.D. No. 320347)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

*Counsel for Plaintiff*